UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DENNIS HALL                                    CIVIL ACTION NO.  12-2824

VERSUS                                         JUDGE ROBERT G. JAMES

ALLSTATE INSURANCE COMPANY                     MAG. JUDGE KAREN L. HAYES

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 16] filed by

Defendant Allstate Insurance Company ("Allstate").  For the following reasons, the motion is

GRANTED IN PART and DENIED IN PART.

I.      FACTUAL AND PROCEDURAL HISTORY

This case arises out of a dispute over a homeowner's insurance policy, Policy No. 921050999

("the policy"), between Allstate and Plaintiff Dennis D. Hall ("Hall").  The policy covered Hall's

home and property located at 701 Pecan Street, Monroe, Louisiana.

On July 1, 2012, a fire occurred at the property.  Hall made a claim on the policy to recover

for the loss of his home and its contents.  After the claim was made, an Allstate representative met

with Hall and his wife, Judy Hall ("Mrs. Hall"), at the home.  She interviewed them and gave them

a $2,700 check for living expenses.  Hall received two more checks in the following months.  Hall

and his family also gave recorded statements and provided an inventory for the home.

After Allstate conducted a preliminary investigation into the cause and origin of the fire, the

claim was  transferred to the Special Investigative Unit ("SIU") for further investigation.  The claim

was assigned to an adjuster, Arletta Henderson ("Henderson").

On August 25, 2012, Henderson sent a letter to Hall, advising him what Allstate deemed his

responsibilities under the policy.  As part of the insured's responsibilities, Hall was required to show the property to Allstate, submit to examinations under oath, and produce household members, employees or representatives, to the extent within his power.  Henderson spoke with Hall several times and requested that he submit to an examination under oath.

On September 5, 2012, counsel for Allstate sent a letter to Hall requesting to schedule his examination under oath and also indicating that Allstate would like to take the statements of Hall's wife, his godson (who was residing at the home at the time of the fire), and the witness who came upon the fire.  On September 12, 2012, Hall's attorney sent a letter of representation to Henderson.

On September 24, 2012, Hall filed suit against Allstate in the Fourth Judicial District Court, Ouachita Parish, State of Louisiana.

On September 25, 2012, counsel for Allstate confirmed in a letter to Hall's counsel that he understood Hall did not wish to allow Allstate to complete its investigation and would, instead, be filing a lawsuit.  On October 1, 2012, Hall called Allstate's counsel, who responded in a letter that same date, explaining that Hall should have his attorney schedule a time for the examinations under oath.

On October 31, 2012, Allstate removed the case to this Court on the basis of diversity jurisdiction.

On February 19, 2013, Allstate filed this Motion for Summary Judgment, contending that Hall's refusal to submit to an examination under oath rendered it unable to complete its investigation and that his actions constituted a material breach of contract.  [Doc. No. 16].  On February 26, 2012, with leave of Court, Allstate filed a corrected Exhibit 3.  [Doc. No. 21].  On March 11, 2013, Hall filed a memorandum in opposition.  [Doc. No. 22].  On March 22, 2013, Allstate filed a reply, in

2

which it objected to portions of the affidavits of Hall and Mrs. Hall.  [Doc. No. 26].

## II.   LAW AND ANALYSIS

### A.   Allstate's Objections to the Affidavits of Hall and Mrs. Hall

In its reply memorandum [Doc. No. 26], Allstate objects to the affidavits of Hall and Mrs. Hall, which were submitted  in support of Hall's opposition memorandum.  Allstate contends that, pursuant Federal Rule of Civil Procedure 56(c)(2) & (4), the affidavits are inadmissible.

Rule 56(c)(2) provides: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Subsection (4) further provides: "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

#### 1.   Hall

Allstate contends that the Court should not consider Hall's statements in paragraphs 11-14 of his affidavit:

> 11.   On another meeting, another Allstate representative met with me and my wife and the representative was very unprofessional and rude toward us.  The representative also made some statements blaming me for the fire.
>
> 12.   Several of my neighbors approached me stating that some [sic] Allstate's representatives were questioning them concerning me being the cause of the fire.
>
> 13.   I did not hear anything from Allstate and I did not receive any other checks from Allstate at that point.  I felt as though Allstate had denied my claim even though I had complied with their requests.
>
> 14.   At this time, I thought my claim was denied and I could not do anything else.

[Doc. No. 22, Exh. 1, Aff. of Hall].  Allstate argues that paragraphs 11 and 12 contain inadmissible

3

hearsay because an unidentified Allstate representative made certain statements and, likewise, unidentified neighbors made certain statements.  Allstate further objects to the Court's consideration of the statements in paragraphs 13 and 14 because those statements reflect only Hall's feelings or beliefs, not facts.

Federal Rule of Evidence 801(c) provides that "'hearsay' is a statement, other than the one made by the declarant . . . offered to prove the truth of the matter asserted."  However, in this case it does not appear that Hall is offering statements 11 and 12 for their truth, but to show his belief or state of mind that Allstate intended to deny his claim.  Thus, to this extent, the statements are not hearsay and may be considered by the Court.[1]

Further, the objected-to statements in paragraphs 13 and 14 are also offered to show Hall's state of mind.  The Court considers them for this reason only.

### 2.     Mrs. Hall

Allstate contends that the Court should not consider Mrs. Hall's statements in paragraphs 11, 13, and 14 of her affidavit, which provide:

> 11.     Arletta Henderson talked to me on the phone and another Allstate representative (name unknown) came out to meet with the family, [sic] this representative was very rude and said a lot of things I did not understand.  I was very confused after we met with this representative but it appeared as if Allstate was blaming us for the fire.

> 13.     We have not received any other checks from Allstate [sic] so we believed that our claim was denied.

> 14.     We fully complied with Allstate until they stopped our living expenses and blamed us for the fire.

---

[1]While the speakers are indeed "unidentified," Allstate certainly has the ability to ascertain the representatives it sent to the Hall's house.  Further, the speakers could be identified through discovery, but Allstate has argued that no further discovery is necessary for the Court to rule on its pending Motion for Summary Judgment.

[Doc. No. 22, Exh. 1, Aff. of Mrs. Hall].

Allstate contends that paragraph 11 of Mrs. Hall's affidavit contains inadmissible hearsay with regard to the allegedly rude conduct and statements of the unidentified Allstate representative.  As with Hall's affidavit, Allstate also objects to Mrs. Hall's statements in paragraphs 13 and 14 because they constitute her feelings and opinions, not facts.

Applying the same analysis, the Court considers these statements for the limited purpose of considering Mrs. Hall's state of mind.

### B.    Effect of Incomplete Discovery

In his opposition memorandum, Hall contends that Allstate's Motion for Summary Judgment should be denied at this time because discovery is incomplete, and discovery is necessary to show that Allstate acted arbitrarily and capriciously.  Hall contends that he has not had the opportunity to depose the Allstate adjusters or to propound interrogatories and requests for production.

 Allstate responds in its reply memorandum that additional discovery is unnecessary because the issue before the Court is not complex and discovery "will not change the fact that . . . Hall did not submit to the requisite statement under oath." [Doc. No. 26, p. 5].

Federal Rule of Civil Procedure 56(d) addresses the issue of incomplete discovery and provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)    defer considering the motion or deny it;
>
> (2)    allow time to obtain affidavits or declarations or to take discovery; or
>
> (3)    issue any other appropriate order.
>
> In this case, the Court finds no basis to delay ruling on the Motion for Summary Judgment

5

or take other action.  It is undisputed that Hall did not submit to an examination under oath, and he has been permitted to give his affidavit and that of his wife explaining why they believed their claim had already been denied, thus rendering an examination under oath pointless.  Based on the parties' arguments, further discovery is not necessary.  The Court is prepared to rule on the Motion for Summary Judgment at this time.

      **C.**      **Motion for Summary Judgment**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

**D.      Breach of the Policy**

Allstate asserts that Hall's claims should be dismissed with prejudice because Hall's failure to submit to an examination under oath constitutes a material breach of the policy which cannot be cured.  Allstate argues that a dismissal with prejudice is necessary to address the prejudice it has suffered because of Hall's failure to submit to an examination under oath.

Hall responds that he fully cooperated with Allstate's investigation, but that Allstate failed to act in good faith and fair dealing, and he believed that his claim had been denied.  Even if the Court agrees with Allstate's interpretation of the policy, Hall contends that the dismissal of his case should be without prejudice to allow him to re-file this lawsuit once the examination under oath is completed.

The Policy provides under "Section 1 Conditions":

3.      What You Must Do After a Loss

 . . .

b)      protect the property from further loss.  Make any reasonable repairs necessary to protect it.   Keep an accurate record of any repair expenses.

c)      separate damaged from undamaged personal property.  Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value, and the amount of loss claimed.

d)      give us all accounting records, bills, invoices and other vouchers, or certified copies which we may reasonably request to examine and permit us to make copies.

e)      produce receipts for any increased cost to maintain your standard of living while you reside elsewhere, and records supporting any claim for loss of rental income.

f)      as often as we reasonably require:

1)      Show us the damaged property.

2)      At our request, submit to examinations under oath,
        separately and apart from any other person defined as you or insured
        person and sign a transcript of the same.

3)      Produce representatives, employees, members of the
        insured's household or others, to the extent it is within
        the insured person's power to do so . . .

[Doc. No. 16, Exh. 1, pp. 15-16].

Additionally, under the General section, in the subsection entitled, "Insuring Agreement,"

the Policy provides:

In reliance on the information you have given us, Allstate agrees to provide the
coverages indicated on the policy declarations.  In return, you must pay the premium
when due and comply with the policy terms and conditions, and inform us of any
change in title, use or occupancy of the residence premises.

[Doc. No. 16, Exh.1, p. 3].

Under Louisiana law, an insurance policy is a contract between the parties that must be

construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana

Civil Code.  *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 262 (5th Cir.

2003).  "Interpretation of a contract is the determination of the common intent of the parties." LA.

CIV. CODE art. 2045.  "When the words of a contract are clear and explicit and lead to no absurd

consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE

art. 2046.  "[This] rule . . . does not authorize a perversion of language, or the exercise of inventive

powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court

to make a new contract for the parties." *Badalamenti v. Jefferson Guar. Bank*, 99-1371 (La. App.

5 Cir. 4/25/00); 759 So.2d 274, 281.

8

"Courts have generally reviewed compliance with insurance policy provisions as a condition precedent to recovery."  *Lee v. United Fire & Cas. Co.*, 607 So.2d 685, 688 (La. App. 4 Cir. 1992) (citing *Lentini Bros. Moving & Storage Co. v. N.Y. Prop. Ins. Underwriting Ass'n.*, 76 A.D.2d 759, 428 N.Y.S.2d 684 (1980), *aff'd* 53 N.Y.2d 835, 440 N.Y.S.2d 174, 422 N.E.2d 819 (1981)).  Thus, "the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to a suit on the policy." *Id.* (citations omitted).  "An outright refusal to submit to an examination is the easy case." *Id.* (citations omitted).

Section 1 of the policy at issue is clear and explicit.  If the insured suffers a loss or damage to property covered by the policy, he is required to cooperate with the insurer to investigate his claim, including the duty to submit to an examination under oath.

Hall does not contend that the policy is ambiguous or deny that he had a duty to submit to an examination under oath.  Rather, he offers evidence that he assisted Allstate in the investigation of his claim and that he filed suit only after he believed Allstate had denied his claim.  He further asserts that Allstate acted arbitrarily and in bad faith prior to his filing suit.

In *Mosadegh v. State Farm Fire & Cas. Co.*, No. 07-4427, 2008 WL 4544361 (E.D. La. Oct. 8, 2008), *aff'd*, 330 Fed. App'x. 65 (5th Cir. 2009), the Eastern District was faced with a similar case.  The court held that a suit was premature when the insureds refused to submit to examinations under oath in accordance with the terms of an insurance policy. *Id.* at *3-4.  In that case, plaintiffs admitted that they failed to submit to examinations under oath, contending that State Farm had denied their claim and acted fraudulently.  However, the evidence showed that State Farm had not denied their claim, but was actively pursuing an examination under oath.  The court explained that "the failure of an insured to cooperate with the insurer has been held to be a material breach of the

9

contract and a defense to suit on the policy." *Id*. at *3 (citation and quotation omitted).  The court also noted that the failure to cooperate with an insurer "may be manifested by a refusal to submit to an examination under oath or a refusal to produce documents." *Id*. (citation and quotation omitted). Finding that plaintiffs offered no "'reasonable explanations'" for their failure to submit to examinations under oath, the court dismissed their claims.  *Id*.

In this case, Hall clearly refused to submit to an examination under oath, as required by the policy.  After the fire occurred on July 1, 2012, Hall admits that Allstate promptly began an investigation and gave him at least three checks between July and September, 2012.  Both before and after Hall retained counsel, Allstate and its counsel made every attempt to get him to submit to an examination under oath as required by the policy.  Even if Hall had concerns about the direction of the investigation, he had counsel, and Allstate clearly expected his counsel would represent him at the examination under oath.  Nevertheless, Hall  refused to submit to the examination under oath, without explanation to Allstate, and filed this lawsuit instead.  The purported belief that the claim had been denied provides no support for Hall's refusal to submit to the examination under oath. There is no record or evidence that the claim was denied prior to his filing suit, and, by that time, he was represented by counsel who could have advised him that Allstate would issue a written denial. Finally, though Hall contends that Allstate acted in bad faith, thus relieving him from compliance with the policy, his only "evidence" of the bad faith is that one unidentified Allstate representative was allegedly rude, and an Allstate representative talked with neighbors about the fire  during the two months between the fire and his filing of the lawsuit.  This is not the type of evidence sufficient to constitute bad faith.

Having determined that Hall had a duty to submit to an examination under oath[2], the Court also considers the positions of the parties as to dismissal.  Although Hall clearly failed to comply with the policy's condition, Allstate was able to conduct its investigation of the fire itself and inspect the property.  This is not a case where the insured engaged in a protracted refusal to cooperate in any way.  It is the prematurity of Hall's actions that lead to the result in this Ruling.  Thus, the Court finds that Hall's conduct is not so egregious as to render him without a remedy if Allstate denies his claim once the investigation is complete.  The Court will dismiss this case without prejudice, so that Hall can meet the condition precedent in the policy of submitting to an examination under oath and fully cooperating with the investigation under the terms of the policy, with the advice and assistance of counsel.  If, at the conclusion of the process, Allstate denies his claim,[3] then he is free to re-file his lawsuit.

## III.    CONCLUSION

For the foregoing reasons, Allstate's Motion for Summary Judgment [Doc. No. 16] is GRANTED IN PART and DENIED IN PART.  To the extent that Allstate moves for dismissal of Hall's lawsuit for failure to submit to an examination under oath, the motion is GRANTED.  However, to the extent that Allstate moves for dismissal with prejudice, the motion is DENIED.

---

[2] Under the policy, Hall also had the duty to produce his family and household members to the extent that it was in his power and to provide necessary documentation.

[3] Although Allstate has indicated that it has denied Hall's claim because of his refusal to submit to an examination under oath, the Court's ruling anticipates that the denial will be revoked and the investigation will be completed as it normally would have under the policy.

11

Hall's claims are DISMISSED WITHOUT PREJUDICE.

MONROE, LOUISIANA, this 1st day of May, 2013.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE